

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
04/18/2012**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 09-39078** |
| **JOHN HART DRAPER; dba JOHN** | § | **CHAPTER  7** |
| **DRAPER REAL ESTATE; aka DRAPER;** | § | |
| **dba VICTORIA RESTORATION; dba** | § | |
| **TELEPHONE ROAD OWNER** | § | |
| | § | |
| **Debtor(s).** | § | **JUDGE ISGUR** |
| | § | |

| | | |
|---|---|---|
| **CARRIAGE CREDIT CORPORATION,** *et al* | § | |
| | § | |
| **Plaintiff(s),** | § | |
| | § | |
| **vs.** | § | **ADVERSARY NO. 10-3153** |
| | § | |
| **MICHAEL FLANAGAN** | § | |
| | § | |
| **Defendant(s).** | § | |

## MEMORANDUM OPINION

Carriage Credit Corporation ("CCC") and Houston Equities, Inc. ("HEI") sued Michael Flanagan to quiet title on two pieces of real property.  John Draper, the Debtor in the related bankruptcy case and a twenty percent owner of the Plaintiffs, executed deeds of trust on the properties in favor of Flanagan.  The Plaintiffs allege that HEI owns one of the properties and that the other is owned by FM 1960 Company, a limited partnership of which CCC is the general partner.  The Plaintiffs moved for summary judgment, arguing that, as a matter of law, John Draper lacked authority to execute the deeds of trust.  The Court denies the Plaintiffs' motion for summary judgment.

**Jurisdiction**

The District Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This proceeding has been referred the Bankruptcy Court pursuant to 28 U.S.C. § 157(a). This is not a core proceeding.

**Background[1]**

In July and August of 2008, John Draper executed two deeds of trust in favor of Michael Flanagan, purporting to grant liens on two pieces of real property: (i) a tract located at 3209 and 3215 West Alabama Street, Houston, Texas ("West Alabama Property") and (ii) a tract located at 710 S. Highway 6, Houston, Texas ("Highway 6 Property"). CCC and HEI, the Plaintiffs, assert that John Draper did not have the authority to grant liens on the properties.

CCC and HEI are owned by John Draper and his four siblings. The companies were started by the Drapers' father, Thomas Draper. Thomas Draper was the president of both HEI and CCC until his death in 2007. After Thomas Draper's death, his five children each became twenty percent owners of the corporations.

The headquarters of both entities are located at the West Alabama Property. The Plaintiffs allege that HEI is the owner of the West Alabama Property. ECF No. 1-1, at 3. Although the Plaintiffs' complaint alleges that CCC owns the Highway 6 Property, the Plaintiffs' motion for summary judgment argues that FM 1960 Company owns the property.

From his office at the HEI and CCC headquarters, John Draper also ran his own business buying and selling houses. Flanagan was John Draper's primary lender. In 2008, after the decline of the housing market, Flanagan became concerned that he was under-collateralized.

---

[1] The Background section summarizes the undisputed facts and the parties' arguments and should not be construed as the Court's findings of fact.

Draper agreed to provide liens on the West Alabama Property and the Highway 6 Property to provide further security to Flanagan.

John Draper signed the deeds of trust both individually and on behalf of CCC and HEI. He identified his title with CCC and HEI as "owner."  Pl's Ex. R; ECF No. 61-18, at 10; Pl's Ex. S; ECF No. 61-19, at 10-11.  The deed of trust on the West Alabama Property states that it was to be effective as of July 22, 2008, and the document was notarized on July 25, 2008.  The Highway 6 deed of trust was to be effective as of August 15, 2008, and the document was notarized on August 21, 2008.

Flanagan asserts that CCC and HEI operated informally and that John Draper had either actual or apparent authority to execute the deeds.  According to Flanagan, the Draper siblings regularly borrowed money from CCC and HEI without observing corporate formalities and without an obligation to make monthly payments.  Flanagan argues that John Draper had the authority to grant a lien on the Properties to the extent of his twenty percent interest.

The Plaintiffs assert that CCC and HEI observed corporate formalities and argue that John Draper did not have the authority to execute the deeds of trust without the approval of other directors.  According the Plaintiffs, the liens on the Properties are invalid.

## Procedural History

John Draper filed for chapter 7 bankruptcy on November 30, 2009.  The Plaintiffs filed this lawsuit against Flanagan in state court on February 4, 2010.  Flanagan filed a notice of removal on March 29, 2010.  ECF No. 1.

Flanagan filed his First Amended Answer on May 17, 2010, adding John Draper as a third-party defendant.  ECF No. 8.  John Draper filed an answer on June 25, 2010.  ECF No. 14.

The Plaintiffs filed a motion to remand on May 21, 2010, arguing that the bankruptcy court lacked subject matter jurisdiction because Draper was not a necessary party to the adjudication.  ECF No. 11.  The Plaintiffs also argued for mandatory abstention under 28 U.S.C. § 1334(c)(2), discretionary abstention under 28 U.S.C. § 1334(c)(1), or equitable remand under 28 U.S.C. § 1452.  Flanagan filed a response on June 4, 2010, arguing that because the validity of Flanagan's liens on the properties would affect the administration of Draper's bankruptcy estate, the Court had subject matter jurisdiction.  ECF No. 12.  A hearing was held on September 28, 2010, and Flanagan filed a supporting brief on October 19, 2010.  ECF No. 36.  On November 15, 2010, the Court denied the motion to remand and issued a memorandum opinion concluding that because the outcome of the proceeding would affect Draper's liability to Flanagan, the Court had subject matter jurisdiction.  ECF Nos. 39 & 40.  The Court found that there was no evidence on the record to support permissive abstention or discretionary remand.

On July 22, 2011, John Draper filed a motion to dismiss Flanagan's counterclaim/third-party petition.  On August 17, 2011, the Court dismissed Flanagan's claims and counterclaims against Draper.

The Plaintiffs filed a motion for summary judgment on January 31, 2012.  ECF No. 61.  Flanagan filed a response and a corrected response on March 2, 2012.  ECF Nos. 71 & 74 (with exhibits at ECF No. 72).  The Plaintiffs filed a reply on March 27, 2012.  ECF No. 86.

On March 16, 2012, the Plaintiffs filed a motion for leave to file their First Amended Complaint.  ECF No. 78.  The Plaintiffs filed a motion for leave to file an amended answer to Flanagan's counterclaim on March 29, 2012.  ECF No. 88.

A pre-trial conference was held on April 12, 2012.  At the pre-trial conference, the Court denied the Plaintiffs' motions for leave to amend.  The Court announced that it would issue a memorandum opinion denying the motion for summary judgment.

**Background on Related Proceeding**

In a separate adversary proceeding filed on May 5, 2010, Flanagan sued John Draper. Adv. No. 10-3199.  Flanagan sought to have Draper's debt to him excepted from discharge for false representations under 11 U.S.C. § 523(a)(2)(A).  In that adversary, Flanagan alleged that Draper had misrepresented the validity of the liens on the Highway 6 Property and the West Alabama Property.

Trial was held on May 9, 2011.  After Flanagan presented his case, the Court ruled on partial facts under Fed. R. Bankr. P. 7052, finding that Flanagan had not presented a prima facie case.  Adv. No. 10-3199, ECF No. 31, at 168-76.  The Court found that Draper had not received any "money, property, services, or an extension, renewal, or refinancing of credit" in exchange for the liens on the Highway 6 Property and the West Alabama Property.  Adv. No. 10-3199, ECF No. 31, at 173-75.

The Court also found that John Draper had not knowingly made a false representation as to whether the liens were valid.  Adv. No. 10-3199, ECF No. 31, at 176-78.  The Court did not decide the issue of whether the liens were valid.  The Court acknowledged that Draper's representations about the validity of the liens may not have been true, but concluded that Draper believed the representations were correct at the time he made them.  Adv. No. 10-3199, ECF No. 31, at 178.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[2]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact."  *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara*, 353 F.3d at 403.  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  *Sossamon*, 560 F.3d at 326.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim.  *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex*, 477 U.S. at 324.  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Summary Judgment Evidence**

The Plaintiffs provide the following summary judgment evidence:

- Peter Draper's deposition, Pl's Ex. A, ECF No. 61-1;

- John Draper's deposition, Pl's Ex. B, ECF No. 61-2;

- Deeds of West Alabama Property from grantor Thomas E. Draper to grantee HEI, Pl's Ex. C, ECF No. 61-3;

- FM 1960 Partnership Agreement, Pl's Ex. D, ECF No. 61-4;

- Deed of Highway 6 Property from grantor Denton Land company to grantee Thomas E. Draper, Pl's Ex. E, ECF No. 61-5;

- Deed of Highway 6 Property from grantor/trustee Thomas E. Draper to grantee FM 1960 Company, Pl's Ex. F, ECF No. 61-6;

- *Bailey v. Haedge*, 1988 WL 86375 (Tex. App.—Houston [14th Dist.] 1988), Pl's Ex. G, ECF No. 61-7;

- October 24, 2007 minutes from meeting of CCC Board of Directors, Pl's Ex. H, ECF No. 61-8;

- Collected agendas and meeting minutes from CCC Board of Directors meetings from 2006-2011, Pl's Ex. I, ECF No. 61-9;

- Collected CCC Resolutions, Pl's Ex. J, ECF No. 61-10;

- July 9, 2008 minutes from meeting of CCC Board of Directors, Pl's Ex. K, ECF No. 61-11;

- November 12, 2008 appraisal procured by John Draper on behalf of CCC, Pl's Ex. L, ECF No. 61-12;

- Michael Flanagan's deposition, Pl's Ex. M, ECF No. 61-13;

- Trial transcript from *Flanagan v. Draper*, Adv. No. 10-3199, May 9, 2011, Pl's Ex. N, ECF No. 61-14;

- November 5, 2007 email from Michael Flanagan to John Draper, Pl's Ex. O, ECF No. 61-15;

- August 27, 2009 letter from Michael Flanagan to Andrew M. Hopkins, Pl's Ex. P, ECF No. 61-16;

- Bylaws of CCC and HEI, Pl's Ex. Q, ECF No. 61-17;

- Deed of trust for Highway 6 Property between purported grantors John Draper and CCC and purported grantee Michael Flanagan, Pl's Ex. R, ECF No. 61-18;

- Deed of trust for West Alabama Property between purported grantors John Draper and HEI and purported grantee Michael Flanagan, Pl's Ex. S, ECF No. 61-19;

- August 19, 2009 minutes from meeting of CCC Board of Directors, Pl's Ex. T, ECF No. 61-20;

- January 6, 2006 CCC Corporate Resolution, Pl's Ex. U, ECF No. 61-21;

- December 6, 2006 CCC Corporate Resolution, Pl's Ex. V, ECF No. 61-22;

- December 25, 2008 CCC Corporate Resolution, Pl's Ex. W, ECF No. 61-23;

- Todd S. Frank's declaration, Pl's Ex. X, ECF No. 61-24;

- Peter Draper's declaration, Pl's Ex. Y, ECF No. 61-25.

Flanagan provides the following summary judgment evidence:

- Disputed fact chart, Def's Ex. A, ECF No. 72.

- Plaintiffs' Original Petition, Def's Ex. B, ECF No. 72-1;

- Peter Draper's deposition as CCC's corporate representative, Volume 2, Def's Ex. C, ECF No. 72-2;

- Peter Draper's deposition as HEI's corporate representative, Def's Ex. D, ECF No. 72-3;

- Michael Flanagan's deposition, Def's Ex. E, ECF No. 72-10;

- December 27, 2001 minutes from meeting of HEI stockholders, Def's Ex. F-1, ECF No. 72-4;

- December 27, 2001 minutes from meeting of CCC stockholders, Def's Ex. F-2, ECF No. 72-5;

- August 19, 2009 minutes from meeting of HEI Board of Directors, Def's Ex. G-1, ECF No. 72-6;

- September 17, 2009 minutes from meeting of HEI Board of Directors, Def's Ex. G-2, ECF No. 72-7;

- August 19, 2009 minutes from meeting of CCC Board of Directors, Def's Ex. G-3, ECF No. 72-8;

- CCC's demand letter to Michael Flanagan, August 27, 2009, Def's Ex. H, ECF No. 72-9;

- HEI's and CCC's Rule 26 initial disclosures, July 9, 2010, Def's Ex. I, ECF No. 72-11;

- HEI's and CCC's first supplemental Rule 26 disclosures, February 22, 2012, Def's Ex. J, ECF No. 72-12;

- Special Warranty Deed with Vendor Lien dated June 1, 2005, between grantor JPMorgan Chase Bank and grantee CCC, Def's Ex. K, ECF No. 72-13;

- Letter from Texas Secretary of State to FM 1960 Company, dated March 22, 1995, revoking right to do business, Def's Ex. L, ECF No. 72-14;

- Certificate of Fact of FM 1960 Company, Def's Ex. M-1, ECF No. 72-15;

- Updated Certificate of Fact of FM 1960 Company, Def's Ex. M-2, ECF No. 72-16;

- Periodic Report of a Limited Partnership of FM 1960 Company, Def's Ex. N, ECF No. 72-17;

- January 6, 2006 CCC Corporate Resolution, Def's Ex. O, ECF No. 72-18;

- CCC balance sheet, dated September 8, 2009, Def's Ex. P, ECF No. 72-19;

- CCC's answers and objections to second set of interrogatories, Def's Ex. Q, ECF No. 72-20;

- Michael Flanagan's affidavit, Def's Ex. R, ECF No. 72-21;

- Melina Cain's declaration, Def's Ex. S, ECF No. 72-22;

- El Ted forfeiture, Def's Ex. T, ECF No. 72-23;

- Sycamore Street forfeiture, Def's Ex. U, ECF No. 72-24.

### Admissibility of Summary Judgment Evidence

Flanagan objects to the admission of CCC's corporate resolutions and the minutes of CCC and HEI's board meetings.  ECF No. 74, at 5-6.  Flanagan argues that CCC did not generate corporate resolutions on a regular, day-to-day basis, and he argues that the stale address and phone number, misspelled heading, and recent production of the resolutions indicate that they are not trustworthy.  Flanagan further argues that because CCC and HEI did not begin to transcribe corporate meetings until after litigation was already in view, the corporate minutes lack reliability.  Flanagan provides evidence that the Plaintiffs sent a demand letter on August 27, 2009, shortly after the August 19, 2009 meeting and before the September 17, 2009 meeting.  ECF No. 72-9, at 2.  The Court concludes that Flanagan establishes a genuine dispute as to the admissibility of the corporate resolutions and minutes, and the Court does not consider the resolutions and minutes for summary judgment purposes.

### Analysis

There are genuine disputes of material fact as to whether CCC has a direct interest in the Highway 6 Property and as to whether John Draper had actual authority to execute the deeds of trust.  The Court therefore denies summary judgment.

First, there is a genuine dispute of material fact as to CCC's interest in the Highway 6 Property.  The Plaintiffs argue that the Highway 6 deed of trust is invalid because neither of the named grantors (John Draper and CCC) owns the property.  ECF No. 61, at 30.  The Plaintiffs provide evidence that the most recent deed in the chain of title lists FM 1960 Company as the

owner of the Highway 6 Property.  Pl's Ex. F; ECF No. 61-6.  Flanagan argues that FM 1960 Company's registration with the Texas Secretary of State was revoked in 1995, and FM 1960 company no longer exists.  Flanagan provides evidence that the last recorded deed in the chain of title lists JPMorgan Chase Bank, N.A. as executor of the estate of Morris Matthews as grantor and CCC as the grantee of the estate's interest in the Highway 6 Property.

The Plaintiffs argue, however, that FM 1960 Company did not cease to exist just because the Secretary of State revoked its registration.  The Plaintiffs note that even if a partnership appears to terminate, if the partners continue business for 90 days without settlement or liquidation or objection from a partner, the continuation is prima facie evidence of an agreement to continue the business.  ECF No. 86, at 25-26 (citing Tex. Bus. Orgs. Code § 152.709(b)).  The Plaintiffs assert that "while the partners never expressly agreed to continue operating, they implicitly did so by refraining from liquidating, continuing to exchange partnership shares, and generally continuing to carry on partnership business."  ECF No. 86, at 26.  And because FM 1960 Company still owns the property, Plaintiffs assert, the Matthews deed does not actually convey any interest in the property to CCC.

Although the Plaintiffs assert that FM 1960 Company continued in existence, they provide no evidence of this fact.  Determining whether FM 1960 Company still exists and whether it owns the Highway 6 Property will require weighing evidence at trial.  There is thus a genuine dispute of material fact as to whether CCC has a direct interest in the Highway 6 Property.

If the Plaintiffs' arguments are correct, CCC does not have standing to bring an action to quiet title as to the Highway 6 Property.  *See Heston Emergency Housing, L.P. v. Texas Dep't of Housing and Cmty. Affairs*, 2012 WL 896419, at *3 (S.D. Tex. Mar. 12, 2012) ("In a corporation

or partnership, a partner, employee, shareholder, or officer does not have standing to sue on his own behalf when the only alleged injury was to the partnership or corporation and not to himself personally.") (citing *Duran v. City of Corpus Christi*, 240 F. App'x 639, 641 (5th Cir. 2007) ("Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party.")).  If Flanagan's arguments are correct, CCC has standing to bring the action, but John Draper may also have had authority to convey CCC's interest in the property.

Second, there is a genuine dispute of material fact as to John Draper's authority to execute the deeds of trust.  John Draper was a twenty percent owner of CCC and HEI.  He was also, according to Peter Draper, the vice-president of CCC, a director of HEI, and assistant secretary of HEI.  Pl's Ex. A, at 29; ECF No. 61-1, at 8; Def's Ex. D, at 17; ECF No. 72-3, at 5. Although John Draper was not specifically authorized by the corporations' bylaws to pledge corporate assets, CCC and HEI's business practices may have implicitly authorized such actions.

Flanagan provides sufficient evidence that John Draper may have had actual authority to execute the deeds to establish a genuine dispute of material fact.  "Actual authority denotes the authority which a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of ordinary care allows the agent to believe himself to possess."  *Reliant Energy Servs. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex. App.—Houston [1st Dist.] 2011).  "In order to prove actual authority, therefore, there must be evidence that either (1) the principal intentionally conferred authority on another to act as its agent, or (2) the principal intentionally, or by a want of due care, allowed another to believe that it possessed authority to act as the principal's agent."  *Id.*

There is a genuine dispute of material fact as to whether Carriage Credit and/or Houston Equities intentionally allowed John Draper to exercise authority over the entities' properties, including the authority to execute deeds of trust against corporate properties; or, intentionally, or by a want of due care, allowed John Draper to believe that he had the authority to execute the deeds of trust.

John Draper's office was located at the CCC and HEI headquarters, and there is evidence that his own business overlapped with CCC.  Peter Draper testified that CCC had loaned money to Draper to buy houses even before Thomas Draper's death:

> Well, some of that was done—some of this money was lent when my father was alive.  So he would—let me think.
>
> When John was buying houses.  So it would be discussed on, John has a house he wants to buy, and it would be brought up, he as president, and we'd discuss it with everybody and they would make a decision to lend money to John to buy a house.

Pl's Ex. A, at 13; ECF No. 61-1, at 4.  John Draper also assigned homes to CCC, and he sold second liens to CCC on homes that he had acquired.  Pl's Ex. A, at 27-28; ECF No. 61-1, at 8. CCC was unable to collect on at least some of the second liens after the properties were foreclosed on.  Pl's Ex. A, at 28; ECF No. 61-1, at 8.

There is evidence that John Draper may have had even more freedom to use corporate assets after Thomas Draper's death.  After Thomas Draper died, according to Peter Draper, "there was a decision by the family to try to—after the death of my dad to—they wanted to divest and they wanted to have not things as a group but everybody to kind of have their own." Pl's Ex. A, at 13-14, ECF No. 61-1, at 4-5.  CCC was used "to track what people were getting." Pl's Ex. A, at 14, ECF No. 61-1, at 5.  Four of the Draper siblings borrowed money from CCC, and the promissory notes did not require monthly repayment.  Pl's Ex. A, at 21-22; ECF No. 61-

1, at 6-7.  Instead, the notes were "balloon notes that have to be paid.  At one point the thought was to divest.  And in talking to our lawyers, if everybody who was an owner of [CCC] had an equal distribution, that was how we were going to do it."  Pl's Ex. A, at 22; ECF No. 61-1, at 7.

Peter Draper also testified that John Draper had "already pulled or withdrawn more than his proportionate share" of the corporate assets.  Pl's Ex. A, at 115; ECF No. 61-1, at 30.  This statement could support an inference that the Draper siblings were implicitly authorized to withdraw assets up to the amount of their share.  John Draper testified that he believed he had authority to pledge assets up to the amount of his interest, stating, "It's my understanding that I had that authority because of the stock, because of my 20 percent share. . . . I still think I have authority."  Pl's Ex. B, at 90, 93; ECF No. 61-2, at 24.  Although Peter Draper's testimony raises a fact question as to whether John Draper had already withdrawn his share of the corporate assets, the testimony corroborates John Draper's understanding that each sibling was authorized to withdraw assets up to the amount of his or her own interest in CCC and HEI.  There is a genuine dispute of material fact as to whether John Draper was implicitly authorized to withdraw (or pledge) corporate assets to the extent of his percentage of interest in the corporations.  Moreover, even if John Draper had already withdrawn his twenty percent share of the corporate assets, there is a genuine dispute of material fact as to whether the corporations' lack of due care led John Draper to believe that he was authorized to withdraw or pledge additional assets.

There is evidence that the Plaintiffs operated on an informal basis.  Although the Plaintiffs argue that a resolution would have been necessary to authorize the deeds of trust, the evidence could be interpreted to conclude that corporate practices were much less formal.  Although Peter Draper testified that loans to one of the Draper siblings would be discussed and agreed upon, there is no evidence that loans or withdrawal of assets necessarily required a

resolution.  Peter Draper testified that he had obtained a loan for improving his house without a corporate resolution.  Pl's Ex. A, at 15; ECF No. 61-1, at 5.  He also testified that for some time, CCC kept only informal minutes that "didn't maybe cover everything we talked about at times."  Pl's Ex. A, at 33; ECF No. 61-1, at 9.  John Draper, he testified, "would come away from things that were discussed thinking that that was an action item instead of just a discussion item."  Pl's Ex. A, at 33; ECF No. 61-1, at 9.

HEI's operations were similarly informal and melded with CCC's operations.  In his deposition as the representative of HEI, Peter Draper testified that at one point, CCC borrowed $50,000.00 from HEI and then loaned the money to Charles Draper, another of the Draper siblings.  This transaction took place without any corporate resolution from HEI, although there was a CCC corporate resolution.  Peter Draper explained, "The money was not available in Carriage.  So we borrowed the money from Houston Equities.  You know, we're all common owners.  So it's all being discussed among the same ownership."  Def's Ex. D, at 13; ECF No. 72-3, at 4.  Peter Draper's deposition testimony on behalf of HEI thus provides further evidence that there may have been an understanding among the Draper siblings that they had authority as "common owners" to take action without regard to corporate formalities.

The informality of the Plaintiffs' business operations may constitute evidence that the Plaintiffs intentionally authorized the siblings to use corporate assets without formal approval.  In the alternative, Peter Draper's testimony could be interpreted to support a finding that the Plaintiffs' records and business practices were consistently so lax as to constitute a lack of due care, allowing John Draper to believe that he had authority to execute deeds of trust against company property.

Because there is a genuine dispute as to whether John Draper had actual authority to execute the deeds of trust, the Court does not determine whether there is sufficient evidence to establish a genuine dispute as to apparent authority.

The Plaintiffs also argue that the deeds should be set aside on the basis of lack of consideration. The Plaintiffs cite case law holding that a deed may be set aside "upon only slight evidence of fraud where there has been a showing that the price paid was grossly inadequate." *Bailey v. Haedge*, 1988 WL 86375, at *5 (Tex. App.—Houston [14th Dist.] 1988, no writ). "[W]hile mere inadequacy of price is not a legal ground for setting aside a sale of property, yet, where there has been a great inadequacy of price shown, the courts have been willing to set aside a deed where there has also been shown slight evidence of fraudulent acts." *Swink v. City of Dallas*, 36 S.W. 2d 222, 227 (Tex. Comm'n App. 1931, holding approved). The Plaintiffs argue that in this case, the lack of consideration is so extreme as to show, in itself, slight evidence of fraudulent acts.

The Court does not grant summary judgment on this basis. Although the Court found at the trial of *Flanagan v. Draper*, Adv. No. 10-3199, that Draper did not obtain "money, property, services, or an extension, renewal, or refinancing of credit" within the meaning of § 523(a)(2)(A) as a result of his representation that the liens were valid, the Court specifically found that Draper did not intend to defraud Flanagan.

Moreover, the Court does not read *Bailey* and *Swink* as saying that lack of consideration is itself evidence of fraud, but interprets these cases to require *both* inadequate consideration *and* at least slight evidence of fraud. In *Bailey*, the court found evidence that the contested transaction had involved "misrepresentation of the legal effect of an instrument." 1988 WL 86375, at *5. In *Swink*, the appellate court, reversing a judgment against the grantor of the deed

17 / 18

and remanding the case, simply noted that there may have been slight evidence of fraudulent acts in light of the plaintiff's mental condition and seclusion and evidence that the grantee had sought her out as part of a "carefully considered enterprise."  36 S.W.2d at 225, 227.  Neither case stands for the proposition that mere lack of consideration is, by itself, evidence of fraud, and the Court does not grant summary judgment on the basis of lack of consideration.

Because there are genuine disputes of material fact as to whether CCC has a direct interest in the Highway 6 property and as to whether John Draper had actual authority to execute the deeds of trust, the Court does not grant summary judgment.

### Conclusion

The Court denies the Plaintiffs' motion for summary judgment.

SIGNED **April 18, 2012.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE